691 A.2d 520

**In re L.J. and John, Jr.**

**Appeal of John DOE, Sr.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1996.

Filed March 21, 1997.

688

Cathryn A. Miller, Philadelphia, for appellant.

L. Roy Zipris, Assistant Public Defender, Philadelphia, for appellees.

Sue Rock, Philadelphia, for Department of Human Services, participating party.

Before EAKIN, SCHILLER and MONTEMURO,* JJ.

## OPINION

MONTEMURO, Judge:

This appeal lies from an Order of the Court of Common Pleas of Philadelphia County, permitting the adoption of L.J., a dependent child in the custody of the Department of Human Services. Appellant, John Doe, Sr., is the natural father of L.J.'s half-sibling, John Doe, Jr. The main issue presented to this Court is one of first impression: does a half-sibling have standing to appeal an order changing a dependent child's family service goal to adoption? Because we conclude that he does not, we affirm.

L.J. was born to M.D. on January 10, 1989, and his natural father died on December 6, 1990. Two years later, on December 28, 1992, M.D. voluntarily placed L.J. in foster care. Appellant was living with M.D. and L.J. at that time, although it is disputed when he actually moved into their home.[1] On January 22, 1993, L.J. was adjudicated dependent and placed in the custody of Philadelphia's Department of Human Services (DHS). John Doe, Jr., L.J.'s half-brother, was born on May 20, 1993. One week after his birth, John Doe, Jr. was voluntarily placed in the same foster home as L.J.; M.D. was then very ill, and neither she nor Appellant was able to care for the child. On June 24, 1993, John Doe, Jr. was also adjudicated dependent. In January of 1994, a member of the Child Advocacy Unit (CAU) of the Defender Association was

---

* Retired Justice assigned to Superior Court.

1. Appellant claims he began living with M.D. in the fall of 1991; however the Department of Human Services' records reflect that Appellant moved in one month before L.J.'s placement in foster care.

appointed to represent both L.J. and John Doe, Jr.; the same CAU attorney appointed initially continues to represent both children.

M.D. died on September 16, 1994. On November 7, 1994, the child advocate and DHS agreed that L.J.'s family service goal should be changed to adoption. On November 22, 1995, Appellant, for himself and on behalf of his son, filed a motion to disqualify the child advocate on grounds of conflict of interest, arguing that because counsel represented both children, she was unable effectively to pursue John Doe, Jr.'s interest in maintaining a relationship with his half-brother. After a hearing held on November 28, 1995, the trial court denied Appellant's motion.[2] Another hearing was then scheduled on the issue of whether Appellant and/or his son had standing to intervene in L.J.'s goal change proceedings. Appellant filed a motion to intervene on December 11, 1995, which was denied at the standing proceeding on December 21, 1995. That same day, the trial judge approved the change of L.J.'s family service goal to adoption. This timely appeal followed.

Appellant raises three issues for our review: (1) whether the trial court erred in its determination that John Doe, Jr. lacked standing to participate in his half-brother's goal change proceedings; (2) whether the trial court erred in further deciding that Appellant lacked standing to participate in L.J.'s goal change proceedings; and (3) whether the trial court erred in refusing to disqualify the child advocate on the basis of a conflict of interest.

In an appeal from a goal change order, our standard of review is abuse of discretion; we are bound by the facts as found by the trial court unless they are not supported in the record. *In Interest of M.B.*, 449 Pa.Super. 507, 510, 674 A.2d 702, 704 (1996). However, before we are permitted to review the appropriateness of the goal change order here, we must

2. This hearing was scheduled before Appellant filed his disqualification motion. Apparently, the child advocate and counsel for DHS believed the proceeding was limited to the issue of Appellant's standing. (N.T. 11/28/96 4–5).

determine whether Appellant's son, John Doe, Jr., has standing to appeal.[3]

To possess standing to challenge an order of the court, a person must be aggrieved by that order. *S. Whitehall Township Police Serv. v. S. Whitehall Township,* 521 Pa. 82, 86, 555 A.2d 793, 795 (1989) (citation omitted). Specifically, (a) the challenger must "have a substantial interest in the subject-matter of the litigation; (b) the interest must be direct; and (c) the interest must be immediate and not a remote consequence." *Id.* (citation omitted).

As to the first of these criteria,

[a] "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

*Id.* at 86–87, 555 A.2d at 795 (citations omitted). *See Ken R., on Behalf of His Daughter, C.R. v. Arthur Z.,* 546 Pa. 49, 682 A.2d 1267 (1996) (applying same standard for standing to appeal from custody order); *In the Interest of Garthwaite,* 422 Pa.Super. 280, 619 A.2d 356 (1993) (applying same standard for standing to appeal from dependency order).

Measuring this case against the standard, we find that the interest of Appellant's son, John Doe, Jr., in the outcome of this proceeding is, in fact, substantial. Undoubtedly a sibling has a greater interest in the disposition, and possible adoption, of his half-brother than does the public at

3. The question of John Doe, Jr.'s standing must be examined first because Appellant may only acquire standing vicariously. *See In the Interest of Garthwaite,* 422 Pa.Super. 280, 619 A.2d 356 (1993) (holding that natural mother's boyfriend did not have standing to appeal dependency adjudication since his interest in the hearing was not substantial, direct, or immediate).

large. *See Ken R.,* 546 Pa. at ——, 682 A.2d at 1270 (finding that a sibling who wishes to obtain court ordered visitation privileges with other half-siblings has "substantial" interest in maintaining relationship with siblings). We also find that John Doe, Jr. has a direct interest in the outcome of L.J.'s goal change proceedings, that is, one which can be harmed by the result. Appellant argues that his son is harmed by the goal change because L.J.'s adoption will sever all legal ties between John Doe, Jr. and L.J. We agree that the adoption which is the inevitable effect of the goal change will indeed harm the legal relationship between L.J. and John Doe, Jr.

■ Finally, we must consider whether John Doe, Jr.'s interest is immediate, that is, whether it lies in the "zone of interests sought to be protected by the statute or constitutional guarantee in question." *S. Whitehall Township Police Serv.,* 521 Pa. at 87, 555 A.2d at 795. We conclude that since that John Doe, Jr.'s interest is not within the "zone of interests" protected under the Juvenile Act or the Constitution, it is not immediate. *Compare with Ken R.,* 546 Pa. 49, 682 A.2d 1267 (holding that sibling does not have standing to sue for visitation rights since custody statute does not protect rights of siblings).

The interest for which John Doe, Jr. seeks protection is allegedly a constitutional right of siblings to be raised together. However, we can discover no such right in our case law, and the authorities cited in support by amicus [4] are inapposite, as they concern the constitutional rights of **parents,** whether natural parents or foster parents, not siblings. *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding due process clause of the Fourteenth Amendment requires proof by "clear and convincing" evidence before terminating rights of parents in their natural children); *Smith v. Organization of Foster Families,* 431 U.S. 816, 856, 97 S.Ct. 2094, 2115–16, 53 L.Ed.2d 14, 42 (1977) (holding New York statutory procedures providing for a hearing when removing foster children from their foster families is adequate to "pro-

4. The Juvenile Law Center has filed an Amicus Brief on Appellant's behalf.

tect whatever liberty interests [foster parents] may have"); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (holding due process clause of the Fourteenth Amendment guarantees all parents the right to a hearing on their fitness before their children are taken from them). Nor does the right asserted by Appellant and amicus find protection under the Juvenile Act. 42 Pa.C.S.A. § 6301 *et seq.* The stated purpose of the Juvenile Act is "[t]o **preserve the unity of the family whenever possible** and to provide for the care, protection, and wholesome mental and physical development of children coming within the provision of [that] chapter." 42 Pa.C.S.A. § 6301(b)(1) (emphasis added). Both Appellant and amicus interpret the phrase "to preserve the unity of the family" to include the interest of siblings to intervene and participate in each other's goal change hearings as being within the "zone of interests" protected under the statute.

The Juvenile Act governs dependency and delinquency hearings, 42 Pa.C.S.A. § 6303, defining a "dependent child" as one "without proper **parental** care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals[.]" 42 Pa.C.S.A. § 6302 (emphasis added). Thus, in dependency proceedings, the focus of the Act is the behavior of the parent vis a vis the child.

To warrant an adjudication of dependency, the court must be persuaded by clear and convincing evidence that the child is "without proper parental care, and that such care is not immediately available." *In re Swope*, 391 Pa.Super. 484, 487, 571 A.2d 470, 472 (1990) (emphasis omitted). The court's concern is specifically with the quality of care the child is receiving from the parent(s), not the child's relationship with his siblings. Moreover, a child adjudicated dependent may be removed from the custody of his parents only when removal is "clearly necessary." *In re S.M.*, 418 Pa.Super. 359, 364, 614 A.2d 312, 314 (1992). Again, the focal point is the removal of a child from his parents, not from his siblings or other biological relatives. Therefore, we conclude that, consistent with its

concentration on the parent-child relationship, the Act's goal of "preserving family unity" refers, primarily, to sustaining the connection between children and their natural parents.

To support his theory of sibling rights, Appellant cites several cases illustrating the principle that, "[a]bsent compelling reasons . . . siblings should be raised together whenever possible." *Wiskoski v. Wiskoski,* 427 Pa.Super. 531, 535, 629 A.2d 996, 998 (1993), *alloc. denied,* 536 Pa. 646, 639 A.2d 33 (1994).[5] *In re Davis,* 502 Pa. 110, 465 A.2d 614 (1983); *Hockenberry v. Thompson,* 428 Pa.Super. 403, 631 A.2d 204 (1993). However, in *Cardamone v. Elshoff,* 442 Pa.Super. 263, 659 A.2d 575 (1995), this Court stated that the general rule disfavoring separation of siblings "is but one factor to be considered in determining the best interests of the child[;] . . . the policy . . . is not controlling." *Id.* at 279-80, 659 A.2d at 583. In that case, we found no reversible error even where the trial court failed to discuss the policy specifically when making a custody award resulting in the separation of siblings. *Id.* at 280, 659 A.2d at 583. *But see Hockenberry,* 428 Pa.Super. 403, 631 A.2d 204 (finding error in custody award to father when trial court failed to consider family unity doctrine and offered no reasons for separating siblings, and no evidence was presented that mother was incapable of caring for child); *Wiskoski,* 427 Pa.Super. 531, 629 A.2d 996 (finding error in shared custody award when trial court failed to consider family unity doctrine and father offered no reasons for separating child from siblings who live with mother).

In the instant matter, L.J. is an orphan, while John Doe, Jr. has a natural father with whom he may someday be reunited. Significantly, Appellant has not offered himself as a custodial alternative for L.J., in fact, quite the contrary, since during the hearing on the disqualification motion, Appellant's counsel

5. Appellees purport to provide us with "compelling reasons" to justify separating the children: the foster family who cares for them has asked that L.J., diagnosed with Attention Deficit Disorder, be removed because he has become uncontrollable, and John Doe, Jr. is HIV positive. These matters are dehors the certified record, and as such, may not be considered by this court. *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1974).

specifically disavowed any such intention. (N.T. 11/28/95 at 11).[6] Implicit in Appellant's argument therefore, is the notion that the boys' interests coincide only while they are together in foster care; separation would be permissible were John Doe, Jr. to be placed with Appellant, but not for L.J.'s adoption. Therefore, although our Commonwealth encourages family court judges to consider the importance of raising siblings together when making custody dispositions, that consideration does not, in and of itself, confer standing on a sibling who wishes to present evidence on the issue during a dependency hearing.

■ Appellant also contends that his son should be permitted to intervene in L.J.'s goal change proceedings because he meets the requirements of Pennsylvania Rule of Civil Procedure 2327, which permits intervention in a civil action where "such person could have joined as an original party in the action or could have been joined therein; or [ ] the determination of such action may affect any legally enforceable interest of such person. . . ." Pa.R.Civ.P. 2327(3),(4).

Appellant and amicus argue that John Doe, Jr. not only could have been joined as an original party in L.J.'s dependency proceeding, he is already a party since the siblings' cases are, and have always been, listed together. However, just because the siblings' hearings are conjoined does not mean that each may **participate,** by arguing and presenting evidence, in proceedings regarding the other. Apparently the dispositional hearings have been listed together for convenience: L.J. and John Doe, Jr. are half-siblings living in the same foster home, and represented by the same child advocate. With the exception of the instant matter and Appellant's presence, both cases have involved the same circumstances. Therefore, judicial economy has dictated the joint case listing, but does not signify the propriety of mutual intervention here.

6. We note too that although Appellant planned at one point to contest a goal change for his son to long term placement, (N.T. 12/21/95 at 11–12), he subsequently agreed to the change at a hearing held April 22, 1996. (Dependency Review Order, dated 4/22/96 at ¶ 3).

■ Moreover, the Juvenile Act limits participation in dependency proceedings to parties: "the general public shall be excluded from [dependency] hearings[.]" 42 Pa.C.S.A. § 6336(d). Only "[a] party is entitled to the opportunity to introduce evidence and otherwise be heard on his own behalf and to cross-examine witnesses[,]" 42 Pa.C.S.A. § 6338(a); therefore, a person who is not a "party" to a proceeding has no right to participate.

■ Although the term party is not defined in the Act, this Court has considered two factors in determining whether or not a person should be given "party" status in a juvenile proceeding: "first, that [ ]he is the legal custodian of the juvenile; second, that it is [his] care and control of the juvenile that is in question." *In the Interest of Michael Y.*, 365 Pa.Super. 488, 496, 530 A.2d 115, 120 (1987). *See also In re Manuel*, 389 Pa.Super. 80, 566 A.2d 626 (1989) (finding that foster parents should have been considered parties to the proceedings and been afforded counsel since they had cared for dependent child almost all of her life, they are the legal guardians of child's mother, and their care and control of the child was the subject of the hearing). As Appellant correctly notes, we stated in *Michael Y.* that "the fact patterns of dependency cases are too variable to permit us to establish one definition that would be appropriate for all cases." *Michael Y.*, 365 Pa.Super. at 496, 530 A.2d at 119–20. Therefore, he concludes that these factors are not the only ones we should consider in deciding whether John Doe, Jr. could have been a party to L.J.'s proceedings. However, as noted above, the Juvenile Act focuses on the care and control afforded a child, regardless of the status of the provider: natural parent, foster parent, or parent substitute. Although we have declined to define the term party specifically, logically a party is any person who in some way cares for or controls the child in question, or who is alleged to have abused the child. John Doe, Jr. does not meet this definition, nor does he meet the requirements of Rule 2327.[7]

7. We do not address the question of whether a sibling might qualify as a party under other circumstances.

 Appellant points out that "dependency proceedings are the mechanism by which persons without *prima facie* custody rights delineated in state statutory or common law can challenge a custody arrangement." (Appellant's Brief at 31). In fact, the Act provides that a dependency petition may be brought by "any person." 42 Pa.C.S.A. § 6334. Third parties, however, "are permitted to file dependency actions **only** if it appears there is a **serious threat to the welfare** of the child." *Helsel v. Blair County Children and Youth Servs.*, 359 Pa.Super. 487, 496, 519 A.2d 456, 460 (1986) (emphasis added). In the instant case, Appellant "for himself and on his son's behalf, seeks standing to challenge the bases for DHS' determination to make L.J. available for adoption...." (Appellant's Brief at 31). Appellant makes no claim that there was a "serious threat" to L.J.'s welfare; he simply wishes to "give [his] child a voice in his own future and ... ensure the thorough examination of L.J.'s best interests." (Appellant's Brief at 38). Such an objective is insufficient to qualify John Doe, Jr. as a party to proceedings involving a goal change for L.J.

 Appellant also argues that his son's intervention is appropriate because he possesses a "legally enforceable interest" which is or will be affected by the proceedings. Pa. R.Civ.P. 2327(4). He claims his son has a substantive due process right to be raised with his biological family, and a right in Pennsylvania, absent compelling reasons, to be raised with his siblings. (Appellant's Brief at 35).

 As we have already noted above, no absolute constitutional or statutory right to be raised with a sibling yet exists in our jurisprudence. The Pennsylvania Supreme Court has found that the " 'exact boundaries of the 'legally enforceable interest' limitation [of Pa.R.Civ.P. 2327(4) ] are not clear.' " *Pennsylvania Railroad Co. v. Hughart*, 422 Pa. 615, 618, 222 A.2d 736, 738 (1966) (quoting 3 Goodrich–Amram § 2327–1 (1963)). However, the exclusion " '[ ] owes its origin to the desire of the courts to prevent the curious and meddlesome from interfering with litigation not affecting their rights.' "

*Pennsylvania Railroad Co.*, 422 Pa. at 618, 222 A.2d at 738 (quoting 3 Goodrich–Amram § 2327–1 (1963)). The fact that the proceeding may, in some way, affect the proposed intervenor is not sufficient to invoke a "legally enforceable interest." *See In re Subpoena of Pennsylvania Crime Commission*, 453 Pa. 513, 309 A.2d 401 (1973) (refusing appellants' intervention in subpoena enforcement proceedings because their concern that records might contain incriminating evidence against them and facilitate further investigation is not sufficient to justify intervention); *Pennsylvania Railroad Co.*, 422 Pa. 615, 222 A.2d 736 (refusing attorneys' request to intervene in trespass action since their interest was in collateral issue regarding whether plaintiff's attorney was engaging in unauthorized practice of law).

Although Pennsylvania strongly favors raising siblings together whenever possible, this policy does not confer on John Doe, Jr. a "legally enforceable interest" such as to permit intervention in L.J.'s goal change proceedings under Rule 2327. The focus of such proceedings is exclusively on the best interests of the child whose future is under consideration, *In Interest of M.B.*, 449 Pa.Super. at 512, 674 A.2d at 705, and is not primarily concerned with proximity to the child's siblings, or, indeed, with the best interests of those siblings. In the instant case, counsel for L.J. also represents John Doe, Jr., is fully aware of the boys' relationship, and had considered the consequences of their separation when recommending the goal change for L.J.: "[L.J.]'s best interest is to be adopted and this outweighs [John Doe, Jr.]'s interest to maintain contact with [L.J.]." (Memorandum of Law in Support of Denying Standing to [John Doe, Sr. and John Doe, Jr.] to Intervene in a Hearing for [L.J.] ).

It is necessary to insure that, in determining whether to change L.J.'s goal plan to adoption, the trial judge considers all the factors and evidence pertaining to L.J.'s best interests, including the importance of maintaining the relationship between L.J. and John Doe, Jr. Indeed, the court has appointed a child advocate for this very reason whose purpose is to determine what is in L.J.'s best interests, and present her

conclusions to the court. Unlike Appellant, she can objectively consider all the options available for L.J. Although a determination of L.J.'s best interests might well have included evidence from Appellant concerning his son's relationship with L.J. as a factor to be examined, nevertheless we do not conclude that the lack of such evidence alone gives Appellant, or his son, the right to question the judge's ultimate decision. *See Cardamone*, 442 Pa.Super. at 280, 659 A.2d at 583 (finding no reversible error when trial court failed to specifically discuss the policy of raising siblings together when making custody award that separated siblings). Moreover, given that reunification of Appellant with his son is still a possibility, however remote, and that he has not volunteered as a possible adoptive parent for L.J., we conclude that further proceedings would not alter the outcome.

Our disposition of the issue of John Doe, Jr.'s standing compels the conclusion that Appellant's argument with respect to his own position is without substance. Without any legal or familial relationship with L.J., Appellant clearly cannot acquire standing independently to challenge the court Order. The only possible source of such status for Appellant is through his son, and we find that the biological link with L.J.'s half-brother fails to provide a substantial, direct, and immediate interest in the outcome of these proceedings. Since we have concluded that John Doe, Jr. lacks standing to appeal his half-brother's goal change Order, so does his father.

Finally, Appellant contends that the trial judge erred in denying his motion to disqualify the child advocate since her representation of both siblings constituted an impermissible conflict of interest. However, since Appellant had no standing to participate in L.J.'s hearing, he had no standing to present a disqualification motion. Further, counsel faces no conflict of interest where only one legitimate interest is being represented; we have already determined that neither Appellant nor his son has such an interest. Thus given our conclusion that neither Appellant nor his son have standing to appeal L.J.'s goal change Order, we could decline to entertain their conflict of interest argument. However, because the trial

judge addressed the disqualification motion on its merits before establishing that Appellant and his son had no standing to participate in L.J.'s goal change proceeding, we too will examine the issue.[8]

■ The Pennsylvania Rules of Professional Conduct mandate that a lawyer "shall not represent a client if the representation of that client will be **directly adverse** to another client, [or] . . . if the representation of that client may be **materially limited** by the lawyer's responsibilities to another client. . . ." Pa.R.P.C. 1.7(a), (b) (emphasis added).[9] Appellant argues that L.J.'s interest in being adopted and John Doe, Jr.'s interest in maintaining a relationship with his sibling are directly adverse, and that the child advocate's promotion of L.J.'s interest in adoption "materially limits" her representation of John Doe, Jr.

Even assuming that both boys have legitimate interests, these interests are not directly adverse as contemplated by the Rules. Both L.J. and John Doe, Jr. are concerned with maintaining their sibling relationship, and there is nothing in the record to compel the conclusion that the relationship could

**8.** Appellees have asked us to quash the appeal on this issue, arguing that the order denying the disqualification motion was a collateral one, Pa.R.A.P. 313(b), from which Appellant failed to file a notice of appeal within 30 days as required by Pa.R.A.P. 903. However, a motion to disqualify counsel is interlocutory, and, therefore, unappealable. *See Middleberg v. Middleberg*, 427 Pa. 114, 233 A.2d 889 (1967) (holding order disqualifying counsel is interlocutory as to party represented by counsel as it does not terminate litigation); *Flood v. Bell*, 287 Pa.Super. 515, 430 A.2d 1171 (1981) (holding order refusing to disqualify counsel is interlocutory as to party petitioning for disqualification); *see generally Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571, 581 (1981) (holding that "a district court's order denying a motion to disqualify counsel is not appealable under [28 USCS] § 1291 prior to final judgment in the underlying judgment.") (footnote omitted). Appellant did lodge a timely appeal from the goal change order, which is final and appealable. *In Interest of M.B.*, 388 Pa.Super. 381, 565 A.2d 804 (1989), *allocatur denied*, 527 Pa. 601, 602, 589 A.2d 692 (1990).

**9.** These general rules do not apply when the lawyer reasonably believes the dual representation will not adversely affect either relationship, **and** the clients consent after consultation. Pa.R.P.C. 1.7 (a)(1)–(2), (b)(1)–(2). In the instant case, since both clients are minors, their consent cannot be obtained, and the exceptions are inapplicable.

not be sustained despite L.J.'s adoption. The child advocate correctly argues that under the circumstances of this case, any interest in preserving the status quo is secondary to L.J.'s interest in being adopted. Although Appellant seems to suggest that John Doe, Jr.'s only interest is in maintaining his relationship with L.J., he may also have a strong interest in being reunited with his natural father. If reunification were ever to be approved, it is unlikely that either counsel or Appellant would argue that the goal should not be changed because raising the siblings together should take precedence, especially where Appellant has not offered to adopt L.J. himself. Therefore, we conclude L.J. and John Doe, Jr.'s interests are not directly adverse.

Next, we must consider whether the child advocate's representation of John Doe, Jr. was materially limited by her advocacy of adoption for L.J. Again, we conclude that it was not. Even if the child advocate had concentrated solely on John Doe, Jr.'s interest in maintaining his relationship with his half-brother, there is nothing else she could have done to effectuate that interest. Because we have concluded that John Doe, Jr. had no standing to intervene in L.J.'s goal change hearing, the child advocate could not have asserted John Doe, Jr.'s position at the hearing.

Appellant also denounces the dual representation on grounds that the child advocate "will have to use John Doe, Jr.'s confidential information[, gained during an attorney/client relationship,] against him." (Appellant's Brief at 16). However, Appellant offers no factual support for his allegations, and fails to specify any "confidences" which might have been revealed. *Compare with In the Interest of Saladin*, 359 Pa.Super. 326, 330, 518 A.2d 1258, 1260 (1986) (finding "actual conflict" when defendant's attorney could not effectively cross-examine victim without divulging information he learned while representing victim on different case; specifically that victim had been in school for disturbed children, had tried to bite off his own finger, and had previously been committed to a mental hospital). With only Appellant's bare assertion in support, we are not persuaded that confidences such as he warns against

even exist, much less that counsel's three and one-half year old client could articulate them.

Finally, Appellant and amicus express concern about the child advocate's dual role in these proceedings, since in addition to acting as an advocate for her client's position, she also serves as L.J.'s guardian *ad litem*, the arbiter of where her client's best interests lie. Appellant and amicus argue that this dual role is impermissible. However, faced with a similar claim, this Court has found no difficulty:

> Appellant's final argument is that the child advocate should have acted as legal counsel to the children and instead, acted as guardian *ad litem*. We agree with the trial court that since the child advocate fulfilled its duty to assert the children's best interests, there was no error.

*In the Matter of Luis R.*, 430 Pa.Super. 518, 525, 635 A.2d 170, 173 (1993), *allocatur denied*, 538 Pa. 635, 647 A.2d 511 (1994). Since the child advocate in the instant case has asserted L.J.'s best interest, we too find no error.

Despite Appellant's repeated requests for a new hearing with separate counsel for each child, he offers no alternative solution to the present disposition order except, implicitly, to maintain the status quo. He has not, as noted above, proposed himself as an adoptive parent for L.J., and reunification with his son, as a means of keeping the siblings together. Nor has he acknowledged the consequences to L.J. if adoption were to be denied him, merely advancing what he considers to be his son's best interests. While a litigant need not demonstrate altruism in formulating his arguments, more balance is required of the court.

In essence, Appellant would have us subordinate all other considerations to maintenance of the relationship between his son and L.J, and is quite prepared to abandon L.J.'s opportunity without any corresponding sacrifice or obligation on his own part. While we appreciate that his actions are on behalf of his child, we again emphasize that not all interests are equal, and that some must give way to others. The choice here is clear, but does not represent the best of all possible

worlds. It is a compromise position which we are compelled to take on behalf of L.J., whose best interests under the facts of this case are, and must remain, paramount.

Order affirmed.

SCHILLER, J., concurs in the result.