**In the Interest of B.S.**

**Appeal of D.D.**

Superior Court of Pennsylvania.

Submitted Feb. 20, 2007.

Filed May 4, 2007.

---

Lisa M. Vari, Pittsburgh, for appellant.

Michael T. Clark, Indiana, for B.S., appellee.

Jesse D. Daniel, Indiana, for A.S., appellee.

Thomas A. Kauffman, Indiana, for R.D., appellee.

John P. Merlo, Indiana, for Indiana County CYS, appellee.

BEFORE: STEVENS, ORIE MELVIN and POPOVICH, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, D.D., the paternal grandmother of B.S. (child),[1] appeals from an order entered May 4, 2006 determining that she did not have standing to participate in the child's dependency proceedings. After careful consideration, we affirm.

¶ 2 Appellant represents that the child was born on April 27, 2004. As the trial court summarized:

On June 27, 2005, [the child's natural] Mother entered a Voluntary Placement Agreement, placing child into the care and custody of Indiana County Children and Youth Services (hereinafter "IC-CYS"). An Adjudication and Disposition hearing took place on July 27, 2005. Child was placed with ICCYS and adjudicated dependent. Th[e trial] court adopted the goal of return to family. On October 19, 2005, ICCYS placed [c]hild in the care of [Appellant] as a prospective kinship foster parent, pending foster care approval in accordance with Title 55 Pa.Code, Chapter 3700. On December 14, 2005, ICCYS removed child from [Appellant's] care and placed child into another foster care placement. On December 22, 2005, ICCYS placed child back in [k]inship [p]lacement with [Appellant].

On February 14, 2006, a Permanency Hearing was held. During this time, it was brought to the court's attention that [Appellant] had obtained legal counsel and expressed an interest to participate in the proceedings. [Appellant's] counsel was permitted to observe the proceedings, but not to participate as a party.[2] As a result of the permanency hearing, the court entered an order stating that the [c]hild was to remain in the care, custody and control of ICCYS, and that placement in foster care (with [Appellant]) should continue.

On March 16, 2006, ICCYS filed a Petition for Special Relief requesting that the court issue a *nunc pro tunc* order effective February 20[,] 2006 continuing the placement with [Appellant] pending foster care home approval. The court granted the special relief *nunc pro tunc* and a Rule to Show Cause was issued. A hearing was scheduled for April 11, 2006.

---

1. According to Appellant, she is the adoptive mother of the child's natural father. Appellant's brief at 5.

2. This Court has not been provided with a transcript of the February 14, 2006 hearing.

On April 11, 2006, the parents, the IC-CYS solicitor, counsel for the parents and the guardian ad litem for the child were present. [Appellant] also appeared with her counsel, who withdrew his appearance before the proceeding commenced. The court was informed that [Appellant] had retained new counsel, although this counsel was not present.

After the court called the case, the IC-CYS solicitor made a motion to withdraw the Special Relief Petition and requested that the court vacate its order of March 17, 2006. Counsel for the Father requested an explanation for [the] agency's action. The ICCYS solicitor stated that the [Appellant's] home study had raised concerns and the agency no longer wished to seek her approval as a kinship foster parent. Following this explanation, all counsel present informed the court that they did not object to the agency's withdrawal of the Petition for Special Relief and the vacating of the court's order of March 17, 2006. Since [Appellant's] home was not approved as a foster placement, the agency also requested a provision for the transfer of custody of the [c]hild to the agency for placement in an approved foster home. During this proceeding [Appellant] was present and did not request to be heard or participate as a party.[3]

On May 4, 2006, [Appellant's] new counsel filed a Motion to Reconsider the April 11, 2006 Order.[4] The Motion for Reconsideration and [Appellant's] request for standing were denied on May 4, 2006.

Trial Court Opinion, 10/10/06, at 1–4. Specifically, the May 4, 2006 order provided:

AND NOW, this 4th day of May 2006, it is hereby ORDERED, ADJUDGED, and DECREED that:

1. [Appellant] does not have standing in the above captioned matter pursuant to 42 Pa.C.S.A. § 6338(a)[5] and *In re L.J.*, 456 Pa.Super. 685, 691 A.2d 520 [ (Pa.Super.1999) ].

2. The Motion for Reconsideration is denied.

Order, 5/4/06. This appeal followed.[6]

¶ 3 Appellant presents three questions for our review:

1. Whether the Trial Court erred in failing to recognize [Appellant] as a party and grant her standing to participate in dependency proceedings regarding her minor grandson, [B.S.] when [Appellant's] care, custody and control of [the child] were all issues before the trial

---

3. This Court has not been provided with a transcript of the April 11, 2006 hearing.

4. Appellant's Motion for Reconsideration stated that "[a]s a result of the April 11, 2006 hearing, th[e trial court] entered an Order granting ICCYS' Petition for Special Relief and gave permission to remove Child from [Appellant's] care." *See* Certified Record (C.R.), unnumbered docket entry 10 (Motion for Reconsideration at ¶ 34). We note that the certified record does not contain an order dated April 11, 2006 and that the certified docket entries note the following for that date: "Order of Court—Petition for Special Relief Filed by CYS on March 16, 2006 to be With-

drawn." We accept the trial court's recitation of the events that transpired before it on April 11, 2006.

5. 42 Pa.C.S.A. § 6338(a) provides: "A party is entitled to the opportunity to introduce evidence and otherwise be heard in his own behalf and to cross-examine witnesses."

6. By order dated August 21, 2006, the trial court granted Appellant permission to file this appeal *nunc pro tunc*, after she filed a petition alleging a breakdown in the system related to the filing of her notice of appeal. Order, 8/21/06.

court because [Appellant] was acting as [the child's] kinship care provider.

2. Whether the Trial Court erred in failing to grant [Appellant] a hearing on her Motion for Reconsideration of the Trial Court's order removing [the child] from [Appellant's] care when she [has] a right to be heard pursuant to 42 Pa. C.S.A. § 6336.1.

3. Whether the Trial Court erred when it denied [Appellant] standing in dependency proceedings and access to the juvenile docket when [Appellant] has initiated custody proceedings in which she has automatic standing and the trial court must make a best interest of [the] child determination in both the custody proceedings and in the disposition of the dependency proceedings involving [the child].

Appellant's brief at 4. We note that the child's natural father has filed a letter adopting Appellant's brief and that the guardian ad litem has adopted the Appellee's brief by reference pursuant to Pa. R.A.P. 2137, 42 Pa.C.S.A. We also note that Appellee had earlier filed a motion to quash the present appeal, which motion was denied by this Court *per curiam* by order dated November 30, 2006 without prejudice to Appellee's ability to raise the issue before the merits panel. Appellee challenges appellate jurisdiction in its brief but has not filed another motion to quash.

¶ 4 We first address our appellate jurisdiction. Both parties in their statement of jurisdiction contend this Court has jurisdiction to review the order denying standing under the collateral order doctrine.[7] Without addressing the applicability of the collateral order doctrine, we will assume appellate jurisdiction here as we did in *In re L.C., II*, 900 A.2d 378 (Pa.Super.2006),

to review the denial of standing to a paternal grandmother in a dependency proceeding. *See also In re D.K.*, 2007 PA Super 99, 922 A.2d 929 (exercising jurisdiction to review similar order denying standing in a dependency proceeding).

¶ 5 Appellant also argues that this appeal, allegedly taken from the May 4, 2006 order, is untimely and represents an attempt to manufacture appellate jurisdiction because any denial of standing to Appellant occurred months earlier at the February 14, 2006 hearing when her counsel was permitted to observe but not to participate. We, however, have not been provided with a transcript of the February 14, 2006 hearing and are thus left to observe that the May 4, 2006 order itself suggests that it *is* the trial court's determination of the issue of standing; again, that order provides in pertinent part: "it is hereby ORDERED, ADJUDGED, and DECREED that: 1. [Appellant] does not have standing in the above captioned matter pursuant to 42 Pa.C.S.A. § 6338(a) and *In re L.J.*, 456 Pa.Super. 685, 691 A.2d 520 [ (Pa.Super.1997) ]." Order, 5/4/06. Additionally, we note that the trial court in its Rule 1925(a) opinion does not assert that it denied standing at some earlier point in the proceedings; rather, it suggests that it denied standing by virtue of the May 4, 2006 order. *See* Trial Court Opinion, 10/10/06, at 3-4 (reciting the procedural history). As such, we will treat the May 4, 2006 order as the denial of standing, deem the appeal timely filed from that order and proceed to review the merits of the standing issue.

¶ 6 Although matters of standing may involve factual questions, here the essential facts were uncontested and, thus, the

---

**7.** We note that Appellee's assertion in this regard appears to be at odds with its position that the trial court did not deny standing in its

May 4, 2006 order but at some earlier point in the proceedings. *See infra.*

issue was resolved as a question of law, over which our review is plenary. *See Citizens Against Gambling Subsidies, Inc. v. Pennsylvania Gaming Control Board,* 591 Pa. 312, 916 A.2d 624 (2007). *See also In re L.C., II,* 900 A.2d at 380 (treating similar issue of grandparent standing under the Juvenile Act as "largely one of statutory interpretation" over which "our review is plenary.")

¶ 7 In *In re L.C., II,* this Court summarized the existing law as it relates to party status in a dependency proceeding. Specifically, we explained:

The Juvenile Act, 42 Pa.C.S.A. §§ 6301–65, mandates that the adjudication and the disposition of a dependent child are to be addressed separately and in sequential order. First, the court must consider and rule on a dependency petition. A child may be adjudicated dependent if the court finds that he or she lacks proper parental care and control and that such care and control are not immediately available. *In re G.T.,* 845 A.2d 870, 872 (Pa.Super.2004). If the court concludes that a child is dependent, then, and only then, can it proceed to address custody issues and make a disposition of the case consistent with the best interests of the child. 42 Pa. C.S.A. §§ 6341(a) & (c), 6351(a); *see In re A.E.,* 722 A.2d 213, 215 (Pa.Super.1998) (citing *Helsel v. Blair County Children & Youth Servs.,* 359 Pa.Super. 487, 519 A.2d 456, 461 (1986) for the proposition that "a dependency determination is a prerequisite to a disposition of the custody issue"); *In re Michael Y.,* 365 Pa.Super. 488, 530 A.2d 115, 118 (1987) (stating that an adjudication of dependency and a disposition based on best interests of the child represent a two-stage process).

Under the Juvenile Act, attendance at and participation in dependency proceedings are restricted. Dependency hearings are closed to the general public. 42 Pa.C.S.A. § 6336(d); *In re L.J.,* 456 Pa.Super. 685, 691 A.2d 520, 526 (1997). Only a "party" has the right to participate, to be heard on his or her own behalf, to introduce evidence, and/or to cross-examine witnesses. 42 Pa.C.S.A. § 6338(a); *L.J., supra* (stating that a person who is not a party has no right to participate in a dependency proceeding). Although the Juvenile Act does not define "party," case law from this Court has conferred the status of party to a dependency proceeding on three classes of persons: (1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose dependency status is at issue, or (3) the person whose care and control of the juvenile is in question. *In re J.P.,* 832 A.2d 492, 496 (Pa.Super.2003); *L.J., supra; In re Manuel,* 389 Pa.Super. 80, 566 A.2d 626, 628 (1989); *Michael Y., supra.* These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian. 42 Pa.C.S.A. §§ 6351. Due process requires that the child's legal caregiver, be it a parent or other custodian, be granted party status in order to be able to participate and present argument in the dependency proceedings. *See Brooks–Gall v. Gall,* 840 A.2d 993, 997–98 (Pa.Super.2003).

A relatively recent section of the Juvenile Act, added via amendment effective on January 1, 1999, after *L.J., Manuel,* and *Michael Y.* were decided, further indicates that standing in dependency matters is restricted:

§ 6336.1 Notice and Hearing.

The court shall direct the county agency or juvenile probation depart-

ment to provide the child's foster parent, preadoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, preadoptive parent or relative providing care for the child the opportunity to be heard at any hearing under [the Juvenile Act]. Unless a foster parent, preadoptive parent or relative providing care for a child has been awarded legal custody pursuant to section 6357 (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court.

To achieve statutory standing under this section, a foster parent, preadoptive parent or relative providing care must have legal custody of the child, consistent with [J.P., L.J., and Michael Y. ]. This statutory provision is silent regarding either the right to be heard or statutory standing for grandparents or relatives who at some time in the past served as primary caregiver for the child.

900 A.2d at 381–82. While recognizing that our Supreme Court has interpreted other statutes to provide standing for grandparents in custody and visitation actions and for adoption proceedings, see R.M. v. Baxter ex rel. T.M., 565 Pa. 619, 777 A.2d 446 (2001) (interpreting 23 Pa. C.S.A. § 5313(b)) and In re Adoption of Hess, 530 Pa. 218, 219–24, 608 A.2d 10, 11–13 (1992) (interpreting the Adoption Act, 23 Pa.C.S.A. §§ 2101–2910), this Court held in L.C., II that the appellant paternal grandmother did not have standing to participate in delinquency proceedings under the Juvenile Act.

¶ 8 Appellant here argues that she fits into one of the three classes identified in L.C., II as qualifying for party status under the Juvenile Act; specifically, she invokes the third class, i.e., "the person whose care and control of the juvenile is in question." See 900 A.2d at 381. She cites in support two other cases cited by this Court in L.C., II as the basis for recognizing party status for individuals in this third class: Michael Y and In re Manuel. We have reviewed those two cases and conclude they are distinguishable here.

¶ 9 In Michael Y., the grandmother appellant had cared for the child all fourteen years of his life; it was from her legal custody, care and control that he was taken and adjudicated dependent by stipulation entered into by counsel for the child and counsel for the agency on the basis of his arrest for growing marijuana and truancy. 530 A.2d at 116–17. At the dependency hearing, the grandmother was present but did not participate. After the child was adjudicated dependent, she obtained counsel and sought reconsideration, which was denied. Id. at 117. On appeal, this Court held, inter alia, that the grandmother was entitled to party status and had a statutory right to counsel which she did not waive by failing to speak at the dependency hearing. Relevant to party status, this Court stated:

[t]he term "party" is not defined in the Juvenile Act. Nor do we attempt to define its exact parameters here; the fact patterns of dependency cases are too variable to permit us to establish one definition that would be appropriate for all cases. We have held that the parents of a child sought to be adjudicated dependent are parties entitled to court-appointed counsel. In re S.N.W., 362 Pa.Super. 295, 524 A.2d 514 (1987). Appellant in the case sub judice is not the juvenile's parent. However, we are persuaded that appellant merits the status of a party based on either of two considerations: first, that she is the legal cus-

todian of the juvenile; second, that it is her care and control of the juvenile that is in question.

*Id.* at 119–120. Again, in *Michael Y.*, it was from the appellant grandmother's current legal custody, care and control that the child was taken and adjudicated dependent.

¶ 10 In *In re Manuel,* the child had been adjudicated dependent a month after birth and, after initial placement in temporary foster care, was "placed in the custody of appellants under the continuing supervision of CYS" on January 5, 1977. 566 A.2d at 627. Appellants were also the legal guardians of the child's mother, who suffered from severe psychiatric problems. *Id.* at 627 n. 2. As this Court explained:

> On March 18, 1982 [the child] was removed from the custody of appellants and placed at ... a treatment and care facility for dependent children. Appellants contested this placement, and [the child] was returned to their custody on January 26, 1983. Sometime in January or early February, 1988, CYS filed a shelter petition pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301 et seq., seeking removal of [the child] from appellants' custody. Because [the child] had already been adjudicated dependent, and had been sheltered by appellants for some time, the court scheduled a § 6341 dispositional hearing in response to appellee's petition.... At the hearing ... CYS maintained that it was seeking to remove the child because appellants terminated [the child's] therapy, did not cooperate in attempts to reinstitute it, and refused to allow [the child] to attend scheduled counseling.

*Id.* at 627 (footnote omitted).

¶ 11 The appellants in *In re Manuel* had been present but unrepresented at the dispositional hearing. Based on the evidence submitted by the agency, the court re-moved the child from appellants' custody and placed her in a residential program providing regular care and therapy. *Id.* The appellants appealed, and this Court held that they qualified for party status under this Court's statement in *Michael Y.* that such was appropriate where "it is [that person's] care and control of the juvenile that is in question." *Id.* at 628. Specifically, this Court explained:

> Here, appellants, like the great-grandmother in *Michael Y.*, have cared for the child in question for virtually all of her life. Furthermore, appellants are the legal guardians of the child's nearest blood relative, her mother, who is unable to care for herself. Finally, and most importantly, the petition of CYS and the evidence it presented make clear that the subject of the hearing was appellants' care and control of [the child]. We recognize that this case is distinguishable from *Michael Y.*, in that appellants are not the legal custodians of the juvenile; nevertheless, we are satisfied that the factors cited above are sufficient to merit party status for appellants under § 6337.

*Id.* at 628 (footnote omitted). Upon finding the appellants entitled to party status, this Court further determined they had been denied their right to counsel, which they had not waived. *Id.* at 628–29.

¶ 12 We have also reviewed the recent decision of this Court in *In re D.K.,* 2007 PA Super 99, and find it to be distinguishable. In that case, this Court vacated an order denying standing to participate in dependency proceedings to a man who, prior to the commencement of dependency proceedings, had been acting *in loco parentis* to the two children at issue. As this Court explained, "although [a]ppellant was not the legal custodian of the children, he stood *in loco parentis* to the children at the time of their adjudication and his care

and control of them was in question at the hearing." *Id.* at ¶ 14. Also of note, appellant in *In re D.K.* had been acting *in loco parentis* for the children "for most of their lives, was previously determined by the court to have standing to participate in the dependency proceedings, was provided court appointed counsel, and was approved as a kinship care provider for the children." *Id.* at ¶ 2 (footnote omitted). *See also id.* at ¶ 5 n. 3 (noting that the appellee agency did not oppose appellant's request to participate as a party in the dependency proceeding); *id.* at ¶ 5 (noting the trial court's finding that the children had resided with appellant since infancy).

■ ¶ 13 In contrast to *Michael Y., In re Manuel* and *In re D.K.*, in this case Appellant had been providing care for the child pursuant to a kinship placement for a total of approximately 7 months. Appellee retained legal custody of the child at all times, and Appellant, while apparently in the process of submitting the required documentation, had not yet been approved as a kinship foster parent before the agency decided it no longer wished to seek her approval as such. While the focus of whatever proceeding took place before the trial court on April 11, 2006 apparently concerned the reason why Appellee no longer wished to pursue Appellant as a formal kinship foster parent, we refuse to equate that particular focus with the class of persons qualifying for party status as a "person whose care and control of the juvenile is in question."

¶ 14 Appellant also argues that she has standing to participate as a party because she meets the traditional test for standing set forth in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). Specifically, she argues that she has a "substantial interest in the subject matter of the litigation," which is both "direct" and "immediate."

The real issue here is whether she had standing to participate as a party in the child's dependency proceedings; as explained above, we have rejected that she qualifies as a party under *L.C., II* and she does not otherwise qualify as a party under the Juvenile Act. Furthermore, even if we examine the traditional test for standing under *William Penn Parking* as Appellant urges, we would conclude that Appellant's interest, while undoubtedly substantial and direct, is not immediate because it is not within the zone of interests protected by the Juvenile Act. *See In re L.J.*, 456 Pa.Super. 685, 691 A.2d 520 (1997) (half-sibling did not have standing under traditional test for standing to appeal order changing the goal of his half-brother's family service plan to adoption), *appeal denied*, 548 Pa. 681, 699 A.2d 735 (1997); *compare Ken R. v. Arthur Z.*, 546 Pa. 49, 682 A.2d 1267 (1996) (holding that sibling does not have standing to sue for visitation rights where custody does not protect rights of siblings). Accordingly, we affirm the trial court's conclusion that Appellant does not have standing to participate as a party in the child's dependency proceedings.

■ ¶ 15 In her second issue on appeal, Appellant contends that the trial court erred in not permitting her a hearing on her motion for reconsideration when she had a right to be heard pursuant to 42 Pa.C.S.A. § 6336.1. We agree with Appellant that, as a "relative providing care for the child," she had a right to be heard pursuant to that statutory provision but note the trial court's representation that at the April 11, 2006 proceeding "Paternal Grandmother was present and did not request to be heard or participate as a party." Trial Court Opinion, 10/10/06, at 3. Again, in the absence of a transcript of that proceeding, we will accept the trial court's recitation of events. Moreover,

having determined above that Appellant did not have standing as a party, we agree with the trial court that she did not have standing to seek reconsideration and thereby belatedly raise her right to be heard.

¶ 16 In her third issue on appeal, Appellant argues that the trial court erred when it denied her standing in the dependency proceeding and access to the juvenile docket when she has separately initiated custody proceedings for the child. She represents in her brief that she filed a complaint for custody on April 21, 2006. Appellant's brief at 9. We note that she also referred to this filing in her motion for reconsideration before the trial court. C.R. at unnumbered docket entry 10 (Motion for Reconsideration ¶ 36). Although Appellant has provided a copy of this document in the reproduced record at 22a, because that document does not appear in the certified record, we will not consider it. *See Roth Cash Register Co., Inc. v. Micro Systems, Inc.*, 868 A.2d 1222, 1223 (Pa.Super.2005). Moreover, having determined above that Appellant did not have standing as a party, we agree with the trial court that 42 Pa.C.S.A. § 6307 (Inspection of court files and records) does not provide someone in her position access to files and records maintained in a proceeding under the Juvenile Act.[8]

¶ 17 We note, however, as did the panel in *L.C., II*, that "our conclusion [and decision to affirm the particular order appeal-ed from] does not mean [Appellant] would lack standing to seek custody of her grand[child]." 900 A.2d at 382 (*citing e.g., R.M.*). We simply hold that she does not have standing under the Juvenile Act to participate in the dependency proceedings.[9]

¶ 18 Finally, we turn to Appellee's pending application to strike or set aside Appellant's reproduced record on the grounds that her inclusion of certain documents therein violated the express requirements or at least the spirit of this Court's order entered September 1, 2006, which Appellee represents as requiring the records of the proceeding below remain sealed. Motion to Strike/Set Aside Appellant's Reproduced Record at ¶ 1. That *per curiam* order provided in relevant part that "[u]pon consideration of [Appellant's] August 30, 2006 'application for access to trial docket,' the application is denied." Order, 9/1/06. We do not interpret this order to prohibit the inclusion in the reproduced record of documents relevant to the present appeal which happen to be in the possession of Appellant or her counsel although, as stated above, we will not consider any documents (of which there are many) that are not included in the certified record. Accordingly, we deny Appellee's motion to strike or set aside Appellant's reproduced record.

¶ 19 For the foregoing reasons, we affirm the trial court's order.

---

8. 42 Pa.C.S.A. § 6307(a)(7) provides that "[w]ith leave of court, any other person ... having a legitimate interest in the proceedings or in the work of the unified judicial system" may be granted access to the files and records of a proceeding under the Juvenile Act. Here, however, both the trial court and this Court, by *per curiam* order dated September 1, 2006, denied Appellant access. We also note the indication in the certified record that the natural parents of the child have refused to sign the appropriate releases for Appellant or her counsel to have access.

9. As Appellant appropriately notes, dependency proceedings have two distinct stages, *see In re L.C., II*, 900 A.2d at 381, and this one has proceeded to the disposition stage. Existing authority, however, does not distinguish between the two stages for purposes of determining party status under the Juvenile Act and we decline to do so here.

¶ 20 Order affirmed. Motion to Quash denied. Motion to Strike or Set Aside Appellant's Reproduced Record denied.