927 A.2d 268 (2007)
In re F.B., a minor
Appeal of F.B., a minor (Two Cases).
Superior Court of Pennsylvania.
Argued January 31, 2007.
Filed May 22, 2007.
Reargument Denied August 3, 2007.
*269 Julia M. Tedjeske, Pittsburgh, for appellant
Wendy Kobee, Pittsburgh, for CYF, participating party.
James E. Mahood, Pittsburgh, for C.B., participating party.
BEFORE: FORD ELLIOTT, P.J., ORIE MELVIN and TAMILIA, JJ.
OPINION BY TAMILIA, J.:
¶ 1 F.B., born May 17, 1999, appeals, through her guardian ad litem (KidsVoice) and her attorneys, from the May 22, 2006,[1] dependency and interim custody Orders which, inter alia, determined that paternal grandparents/appellees stood in loco parentis with respect to F.B., dismissed the dependency action initiated by the Allegheny County Office of Children, Youth and Families (CYF), and ordered that physical custody of F.B. remain with appellees.[2] *270 The appeals from these Orders have been consolidated.
¶ 2 The record reveals the following factual and procedural history. In its amended petition for dependency filed on January 27, 2006,[3] CYF alleged, inter alia, that mother and father were then married. Father had a criminal history, as well as a history of drug use and domestic violence. In April 2005, mother obtained a Protection from Abuse (PFA) Order against father but continued to have contact with him in violation of that Order.
¶ 3 Parents had a history of unstable housing and were evicted from their home in August 2005. Mother and children subsequently were evicted from a shelter for multiple curfew violations. Thereafter, mother and father lived in various hotels. CYS initiated crisis in-home services. At that time, father tested positive for cocaine and THC, a chemical found in marijuana, and mother refused to submit to a drug test. In addition, CYS had received numerous reports stating that F.B. and sibling P.B. had been physically and possibly sexually assaulted while in mother's care.
¶ 4 On December 11, 2005, father abducted mother and P.B. and assaulted mother's paramour. At that time, F.B. was in appellees' care. In fact, F.B. had been in appellees' care since October 15, 2005, when paternal grandfather took her from a hotel room where parents and children had been staying. Grandfather alleged mother was unresponsive at the time but father agreed that grandfather should take F.B.
¶ 5 On December 14, 2005, upon CYF's request, a shelter hearing was held, at which time the court ordered that F.B. remain in appellees' care.
¶ 6 In its amended petition for dependency, CYF expressed concern that appellees first were reluctant to provide long term placement for F.B., and although they later expressed such willingness, they were not then willing to care for P.B. CYF also alleged appellees provided only limited, supervised access to F.B., limited F.B.'s visitation with her siblings, and neglected her American Indian ancestry.
¶ 7 On January 18, 2006, appellees filed a petition to intervene in the dependency action and two days later filed a complaint seeking custody of F.B. Record, 1148 WDA 2006, No. 4; and Record, 1149 WDA 2006, No. 7.
¶ 8 On May 22, 2006, a hearing was held as to CYF's dependency petition, and as to appellees' petition to intervene and their complaint for custody.[4]
¶ 9 The court first considered appellees' petition to intervene in the dependency action and concluded appellees stood in loco parentis to F.B.[5] Since CYF made no allegations of dependency as to appellees, *271 it dismissed the dependency petition. The court next addressed appellees' complaint for custody. It entered an interim Order providing that F.B. remain with appellees and that the case proceed through the Generations custody education and mediation program.[6]
¶ 10 KidsVoice filed this timely appeal in which it makes the following allegations of error:
1. Can paternal grandparents establish that they had an in loco parentis relationship with their six year old granddaughter if the granddaughter lived with her paternal grandparents for only two months?
2. Can in loco parentis status be evaluated using a purely objective standard without consideration of either (1) best interests of the child or (2) the extent of the child's psychological bonds with the person seeking the in loco parentis status?
3. Can paternal grandparents obtain in loco parentis status if mother did not consent to her six year old child being taken and that mother maintained contact with her daughter during the two months when daughter was living at her paternal grandparents' house?
4. Did the trial court err in not properly considering a child's best interests in making its custody determination, notwithstanding the trial court's statement that it took best interests into account?
Appellant's brief at 5.[7]
¶ 11 We first consider whether we have jurisdiction to entertain these appeals, an issue we can raise sua sponte. See Wagner v. Wagner, 887 A.2d 282, 285 (Pa.Super.2005), citing Mensch v. Mensch, 713 A.2d 690, 691 (Pa.Super.1998). We will consider the appeals from the Orders relating to custody and dependency separately.
¶ 12 Generally, appeals lie only from final Orders. In re J.S.C., 851 A.2d 189, 190 (Pa.Super.2004), citing 42 Pa. C.S.A. § 742, Appeal from courts of common pleas; see also Pa.R.A.P. 341, Final Orders; Generally, (a) General rule (providing that an appeal may be taken as of right from any final Order of a lower court). In assessing our jurisdiction as to the appeal in the custody case in which appellees were granted interim custody, we remain cognizant of the following applicable principles. "Generally, a custody order will be considered final and appealable only if it is both: (1) entered after the court has completed its hearings on the merits; and (2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." Wagner at 285, citing G.B. v. M.M.B., 448 Pa.Super. 133, 670 A.2d 714, 720 (1996). If a custody Order anticipates further proceedings but only upon application of a party, the Order is final and appealable. See Wagner at 285, citing Parker v. MacDonald, 344 Pa.Super. 552, 496 A.2d 1244 (1985).
¶ 13 As for the custody case, it appears to this Court that the May 22, 2006, Order was not final and appealable. *272 The wording of the interim custody Order does not indicate whether it was final and appealable pursuant to the above principles. It is noteworthy, however, that the interim Order required the parties to participate in Generations, a program which anticipates a custody Order upon completion. See Record, 1149 WDA 2006, No. 10. A review of the record, moreover, reveals that within three weeks of the interim Order being filed, the court entered an Order based upon its review of appellees' previously filed motion requesting primary custody, ordering that mini-psychological examinations be conducted and that appellees provide proof of income. Record, 1149 WDA 2006, No. 19. Although appellees did file a petition for special relief in those intervening three weeks, it appears that petition was not necessary to "revive" the custody case and, in fact, the petition does not indicate that was its purpose.[8]See Record, 1149 WDA 2006, No. 15. In sum, it appears that subsequent review of appellees' custody motion was scheduled by the court without intervention by the parties. Cf. Parker at 1247 (the custody case was not scheduled for review by the lower court, and the custody Order was found to be final and appealable). In addition we note that it appears this case had been scheduled for a custody conciliation on June 12, 2006. Record, 1149 WDA 2006, No. 21. Accordingly, we find the interim Order was not final and appealable, as the trial court opined. See Trial Court Opinion, Clark, J., 8/28/06, at 10-11. Thus, we will not address appellant's final issue on appeal relating to the custody Order.
¶ 14 As to the dependency case, we find the court's May 22, 2006, Order is final and appealable since it dismissed the dependency petition as to F.B. Trial Court Order, Clark, J., 5/22/06; see also Pa. R.A.P. 341(b) Definition of final order, (1) (stating that a final Order disposes of all claims and of all parties). Thus, we have jurisdiction to entertain an appeal from it and will address appellant's first three issues since they relate to the petition for dependency.
¶ 15 The standard of review which this Court employs in cases of dependency is as follows:
We must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion.
In the Interest of C.M., 882 A.2d 507, 513 (Pa.Super.2005). "We accord great weight to [the fact-finding] function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him." In re E.B., 898 A.2d 1108, 1112 (Pa.Super.2006) (citations omitted).
¶ 16 "Our scope of review . . . is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record." In the Interest of C.M., at 513.
*273 ¶ 17 It is not necessary for this Court to examine each of appellant's arguments as to why appellees allegedly had not achieved in loco parentis status with respect to the subject child, as we find that status was irrelevant as to the dependency proceeding.
¶ 18 First, we find the court erred in granting appellees' petition to intervene in the dependency proceeding based upon its finding that they stood in loco parentis to the subject child. As this Court recently explained in In the Interest of L.C., 900 A.2d 378 (Pa.Super.2006), three classes of persons have party status in a depending proceeding "(1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose dependency status is at issue; or (3) the person whose care and control of the juvenile is in question." Id. at 381-382. Since appellees do not fit in any of these three categories, they did not have standing. See id. at 382. This does not mean appellees were not entitled to notice of dependency proceedings and an opportunity to be heard. See 42 Pa.C.S.A. § 6336.1, Notice and Hearing. It means, rather, they are not entitled to party status which would entitle them the right to participate, to be heard on his or her own behalf, to introduce evidence, and/or to cross-examine witnesses. See In the Interest of L.C., at 381, citing 42 Pa.C.S.A. § 6338 Other basic rights, (a) General rule, and In re L.J., 456 Pa.Super. 685, 691 A.2d 520 (1997).
¶ 19 We distinguish this case from the recent case of In the Interest of D.K., 2007 PA Super 99, 922 A.2d 929 (2007). In that case, a panel of this Court vacated the trial court's Order which denied standing to the appellant to participate in juvenile dependency proceedings. The panel concluded that "although Appellant was not the legal custodian of the children, he stood in loco parentis to the children at the time of their adjudication and his care and control of them was in question at the hearing[.]" Id. at 935 (emphasis supplied). In the case sub judice, even if we assume appellants stood in loco parentis to the subject child, their care and control of the child was not in question at the hearing. We agree that if it was, they would be entitled to standing. See In the Interest of L.C., at 381-382 (providing that one of the three classes of people who have standing in a juvenile dependency proceeding are those whose care and control of the juvenile is in question). Our holding is consistent with this Courts decision in In the Interest of B.S., 2007 PA Super 126, 923 A.2d 517 (2007), which affirmed a trial court's Order denying a grandmother standing since she did not fit into any of the three categories as enunciated in In re L.C., supra. In the Interest of B.S. was distinguished from In re D.K., because, inter alia, the appellant in Interest of B.S. was not a person whose care and control of the juvenile was in question.
¶ 20 We further find that the court erred in dismissing appellant's dependency petition based upon its finding that appellees stood in loco parentis to the subject child, as it failed to apply legal principles as established by extant case law. This Court has ruled that the doctrine of in loco parentis would not be used to determine whether a person was a parent, legal guardian, or legal custodian for purposes of determining whether a child was a dependent child. In re Davis, 288 Pa.Super. 453, 432 A.2d 600 (1981); see also 42 Pa.C.S.A. § 6302, Dependent child, (4) (stating that a child without a parent, guardian, or legal custodian is a dependent child). In a non-precedential decision our Supreme Court fully adopted this Court's reasoning as to this issue. In re Davis, 502 Pa. 110, 465 A.2d 614 (1983). *274 A recent panel of this Court analyzed this holding, stating that "Davis stands for the sound proposition that the doctrine of in loco parentis should not be employed when determining whether a child has a parent for purposes of determining whether a child is dependent and thus, whether agency involvement should be initiated." In re C.B., 861 A.2d 287, 297 (Pa.Super.2004). We further explained
the thrust of Davis supports the more fundamental precept that the Juvenile Act [42 Pa.C.S.A. §§ 6301-65] should be interpreted to accord the most protection to children. . . . Thus, Davis stands for the essential proposition that the Juvenile Act should be construed so as to afford the maximum opportunity to safeguard children.
Id.
¶ 21 The above makes clear that whether appellees stood in loco parentis to the subject child was irrelevant to the court's granting of appellees' petition to intervene in the dependency proceeding and as to its determination of dependency. Accordingly, we must reverse the Order and remand for proceedings consistent with this Opinion. We note, however, this decision has no effect on appellees' petition for custody. See In the Interest of L.C., supra (emphasizing that although grandmother lacked standing in the dependency proceeding, that did not mean she lacked standing to seek custody of her grandson).
¶ 22 As for the proceedings upon remand, we stress it is only the fact the court below considered appellees' alleged in loco parentis status in making its decision that requires us to reverse. Accordingly, on remand, the court must not consider appellees' alleged in loco parentis status in revisiting the dependency action in light of this decision. We are cognizant that if, while this appeal was pending, the court granted legal custody of F.B. to appellees, the child may no longer meet the definition of a dependent child.
¶ 23 Order reversed and remanded for proceedings consistent with this Opinion.
¶ 24 Jurisdiction relinquished.
NOTES
[1] The Orders are dated May 22, 2006. The docket for 1148 WDA 2006 indicates the Orders were filed May 22, 2006, but the docket for 1149 WDA 2006 indicates the Orders were filed May 24, 2006.
[2] Although this appeal relates only to F.B., we note that CYF's amended petition for dependency related to mother's four children, P.B., F.B., A.D., and M.L., born 12/06/01, 5/17/99, 9/18/90, and 8/16/89, respectively. P.B. and F.B. have the same father, referred to as "father" in this Opinion. A.D. was in the custody of his father at the time CYF filed its amended petition for dependency. M.L.'s father was deceased and M.L. had been living with a family friend. See Record, 1148 WDA 2006, No. 6, amended petition for dependency; see also N.T., 12/14/05, at 3.
[3] The original petition for dependency was filed prior to January 27, 2006, but is not in the record.
[4] The court noted that as of the hearing, father was incarcerated and mother was homeless.
[5] Although in its Opinion, the trial court indicated that on May 22, 2006, it began by considering paternal grandparents' petition to intervene and found they stood in loco parentis to F.B., trial court Opinion at 3, we note that the trial court's January 18, 2006, Order granted appellees' petition to intervene. Record, 1148 WDA 2006, No. 4; and No. 13, Petition to Enforce Order of Court, Exhibit A.
[6] The court granted supervised visitation to mother but not to father since he was incarcerated.
[7] CYF submitted a letter brief stating it did not oppose "any of the arguments advanced on behalf of the appellant, F.B."
[8] We note that appellees failed to comply with a court Order and thus their request for court action, i.e. their motion for primary custody, was dismissed. See Record, 1149 WDA 2006, No. 21. Ultimately, however, appellees filed a petition to reinstate the custody action. Record, 1149 WDA 2006, No. 28. The court entered an Order granting the petition. Id., Trial Court Order, Clark, J., 7/28/06.