J-S65016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.B., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.H., AUNT, | |
| Appellant | No. 1105 EDA 2015 |

Appeal from the Order Entered March 12, 2015
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0000895-2013, FID No. 51-FN-388415

BEFORE:  BENDER, P.J.E., SHOGAN, and JENKINS, JJ.

MEMORANDUM BY SHOGAN, J.:               **FILED NOVEMBER 20, 2015**

Appellant, C.H., the maternal aunt of the subject child, S.B. ("Child"), who was born in July of 2011, appeals from the March 12, 2015 permanency review order in this dependency matter.  The order denied Appellant's motion to intervene in the dependency proceedings because Appellant lacked standing.[1]  After careful review, we affirm.

In its opinion entered on July 1, 2015, the trial court set forth the factual background and procedural history of this appeal, as follows:

_____

[1]  The order also continued Child's foster-care placement, and it continued the goal-change proceedings to allow Child's mother, B.B. ("Mother") an opportunity to consider voluntarily relinquishing her parental rights to Child.

On April 30, 2013, [t]he Philadelphia Department of Human Services, ("DHS"), obtained an Order of Protective Custody ("OPC") based upon a General Protective Services ("GPS") Report on April 26, 2013, alleging that the Child's Mother ("B.B.") was high on wet [a street drug], sitting on someone's front steps while the Child was sitting in a stroller crying. The OPC indicated that Mother appeared belligerent and was unable to provide an address as her place of residence. Mother was also walking the streets late at night with the [c]hild. The OPC also alleged that the Child was behind in her immunizations and that Mother[,] who had been hospitalized at Belmont in the past, had some untreated mental health issues.

On May 2, 2013, a Shelter Care Hearing was held[,] at which time sufficient evidence was presented to support that the return of the Child to Mother would not be in the best interest of the Child. At the time of the Hearing, the Child was residing with the Appellant. At the conclusion of the Hearing, the Order of Protective Custody was lifted, and Temporary Legal Custody was ordered to remain with DHS. (DRO, 5/2/13). A Dependency Petition was thereafter filed by DHS on May 8, 2013.

On May 9, 2013, following an Adjudicatory Hearing, the Child was adjudicated dependent on the grounds of present inability based upon the allegations contained in the Dependen[cy] Petition. Temporary Legal Custody of the Child remained with DHS[,] who [sic] continued to be in foster care with Appellant. [The trial] Court ordered that a Kinship referral be made forthwith. (DRO, 5/9/13).

On December 31, 2013, DHS obtained an OPC on Child's sibling, X.B., in response to a Child Protective Services ("CPS") Report that she was the victim of sexual abuse by the grandson of the Appellant.

On January 10, 2014, X.B. was adjudicated dependent by the [trial court]. On this date, both Child and [her] sibling were removed from the home of Appellant. A Permanency Review Hearing was held for Child on February 27, 2014, at which time [the trial court's] findings confirmed that Child had been removed from Appellant's home on January 20, 2014. [The trial court] ordered that Child be placed in Foster Care through New Foundations. (DRO, 2/27/14).

Permanency Review Hearings were held on May 29, 2014 and August 28, 2014, during which time Child remained in a pre-adoptive Foster Home through New Foundations. (DRO, 5/29/14 and 8/28/14). At the conclusion of the Permanency Review Hearing of August 28, 2014, the case was listed for a Goal Change Termination Hearing.

Goal Change Termination Hearings were scheduled for November 20, 2014 and February 5, 2015, but had to be continued based upon the unavailability of a Judge. During this time[,] the Child remained in continuous care in the same Pre-Adoptive Foster Home through New Foundations. A Goal Change Termination Hearing was scheduled for March 12, 2015. (DRO, 11/20/14 and 2/5/15). In January 2015, DHS filed a Petition to Terminate Parental Rights and to Change the Goal to Adoption for Child and siblings X.B. and C.B.

On February 17, 2015, the Appellant filed a Motion to Intervene in Child's Dependency action. On March 10, 2015, a Motion to Dismiss the Petition to Intervene was filed by the Child Advocate. On March 12, 2015, prior to a Goal Change and Termination Hearing, [the trial court] denied Appellant's Motion to Intervene. (N.T., 3/12/2015, p. 4). This appeal followed.

Trial Court Opinion, 7/1/15, at 1-3. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues, which are presented, verbatim, as follows:

1. Whether the Trial Judge erred and/or abused its discretion as a matter of law in denying Maternal Aunt, C.H.'s petition to intervene as she could have been joined as an original party in the action or could have joined therein.

2. Whether the Trial Court erred or abused its discretion as a matter of law by denying Maternal Aunt, C.H.'s petition to intervene in this action in that any determination in this action may affect any legally enforceable interest of C.H. pursuant to Pennsylvania Rule of Civil Procedure 2326-2350.

3. Whether the Trial Court erred or abused its discretion as a matter of law by denying Maternal Aunt, C.H.'s petition to intervene under the controlling statue governing intervention, Pennsylvania Rule of Civil Procedure No. 2327.

Appellant's Brief at 3.

Our Supreme Court set forth the standard of review for dependency cases as follows:

> The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.
>
> *In re R.J.T.*, 608 Pa. 9, 28-29, 9 A.3d 1179, 1190 (2010). An issue regarding standing to participate in dependency proceedings is a question of law warranting plenary review, and our scope of review is *de novo*. *See In re S.H.J.*, 78 A.3d 1158, 1160 (Pa. Super. 2013); *In re J.S.*, 980 A.2d 117, 120 (Pa. Super. 2009). "The question of standing is whether a litigant is entitled to have the court decide the merits of the dispute or of particular issues." *See also Silfies v. Webster*, 713 A.2d 639, 642 (Pa. Super. 1998)

*In re C.R.*, 111 A.3d 179, 182 (Pa. Super. 2015). *See also In the Interest of F.C., III*, 2 A.3d 1201, 1213 n.8 (Pa. 2010) (stating that for a question of law, our standard of review is *de novo*, and our scope of review is plenary). Because Appellant's issues are interrelated, we address them concurrently.

In each of her issues, Appellant relies on Pa.R.C.P. 2327 governing intervention in civil cases, which provides as follows:

**Rule 2327. Who May Intervene**

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

(1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

(2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or

(3) such person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa.R.C.P. 2327.

With regard to standing in juvenile court matters, Section 6336.1 of the Juvenile Act, 42 Pa.C.S. § 6301, *et seq.*, provides as follows:

### § 6336.1. Notice and hearing

**(a) General rule.**—The court shall direct the county agency or juvenile probation department to provide the child's foster parent, preadoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, preadoptive parent or relative providing care for the child the right to be heard at any hearing under this chapter. Unless a foster parent, preadoptive parent or relative providing care for a child has been awarded legal custody pursuant to section 6357 (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court.

42 Pa.C.S. § 6336.1.

In its brief, the Department of Human Services ("DHS") asserts that the intervention procedure in the dependency matters in this appeal are governed by the Pennsylvania Rules of Juvenile Court Procedure ("Pa.R.J.C.P."), and not the Rules of Civil Procedure. DHS's Brief at 5, 7.

The Pennsylvania Rules of Juvenile Court Procedure that are relevant in this matter are as follows:

**Rule 1100. Scope of Rules**

A. These rules shall govern dependency proceedings in all courts. Unless otherwise specifically provided, these rules shall not apply to orphans' court, domestic relations and delinquency proceedings.

B. Each of the courts exercising dependency jurisdiction, as provided in the Juvenile Act, 42 Pa.C.S. § 6301 *et seq.*, may adopt local rules of procedure in accordance with Rule 1121.

*Comment:* The Pennsylvania Rules of Juvenile Court Procedure are split into two categories: delinquency matters and dependency matters. All delinquency matters are governed by Chapters One through Ten (Rules 100-1099). All dependency matters are governed by Chapters Eleven through Twenty (Rules 1100 – 2099).

**Unless specifically provided in these rules, the Pennsylvania Rules of Civil Procedure and the Pennsylvania Rules of Criminal Procedure do not apply to dependency proceedings commenced pursuant to Rule 1200 and 42 Pa.C.S. § 6301 *et seq.***

These rules govern proceedings when the Juvenile Act vests jurisdiction in the Court of Common Pleas. *See* 42 Pa.C.S. §§ 6321 and 6302.

Each judicial district may promulgate local rules that follow the requirements of Rule 1121 and Pa.R.J.A. 103.

*Note:* Rule 1100 adopted August 21, 2006, effective February 1, 2007. Amended May 12, 2008, effective immediately.

Pa.R.J.C.P. 1100 (emphasis added).

**Rule 1133. Motion to Intervene.**

**A. Contents.** The motion to intervene shall include:

(1) the name and address of the person moving to intervene;

(2) the relationship of the intervening person to the child;

(3) the contact between the child and the intervening person;

(4) the grounds on which intervention is sought; and

(5) the request sought.

**B. Action by court.** Upon the filing of a motion to intervene and after a hearing, the court shall enter an order granting or denying the motion.

> *Comment:* **Under paragraph (B), a motion may be denied if, among other reasons, there are insufficient grounds for the motion, the interest of the movant is already adequately represented, the motion for intervention was unduly delayed, or the intervention will unduly delay or prejudice the adjudication of dependency or the rights of the parties.**
>
> To move for intervention in a dependency case, a person is to show that the interest is substantial, direct, and immediate. ***See, e.g.***, ***South Whitehall Township Police Serv. v. South Whitehall Township***, 521 Pa. 82, 555 A.2d 793 (1989).
>
> Standing is conferred upon a person if the person cares for or controls the child or is accused of

> abusing the child. ***In re J.P.***, 832 A.2d 492 (Pa. Super. Ct. 2003); ***In re L.J.***, 456 Pa. Super. 685, 691 A.2d 520 (1997). ***See also R.M. Baxter***, 565 Pa. 619, 777 A.2d 446 (2001) (grandparent standing); ***Mitch v. Bucks Co. Children and Youth Social Service Agency***, 383 Pa. Super. 42, 556 A.2d 419 (1989) (prospective adoptive parent standing); ***In re M.K.***, 431 Pa. Super. 198, 636 A.2d 198 (1994) (alleged abuser standing). For distinction between foster parent and prospective adoptive parent standing, see ***In re N.S.***, 845 A.2d 884 (Pa. Super. Ct. 2004).
>
> A non-custodial parent may intervene in a dependency petition filed by a third party to protect the child from being adjudicated dependent and placed in the custody of the Commonwealth. ***In re Anita H.***, 351 Pa. Super. 342, 505 A.2d 1014 (1986).
>
> ***See also In re Michael Y.***, 365 Pa. Super. 488, 530 A.2d 115 (1987) and ***In re R.T. & A.T.***, 405 Pa. Super. 156, 592 A.2d 55 (1991) for additional parties to proceedings.
>
> ***See*** Rule 1344 for motions and Rule 1345 for service.

    ***Note:*** Rule 1133 adopted August 21, 2006, effective February 1, 2007.

Pa.R.J.C.P. 1133 (emphasis added).

In addressing the issues Appellant raises on appeal, the trial court reasoned as follows:

> The law on standing in a dependency action is clear. Standing in dependency proceedings is limited to only three classes of persons: (1) the parents of the juvenile whose dependency is at issue; (2) the legal custodian of the juvenile whose dependency is at issue; or (3) the person whose care and control of the juvenile is in question. ***In the Interest of C.R.***, 111 A.3d 179 (Pa. 2015).

Clearly, the Appellant did not qualify as a party. Appellant was not a parent of [Child], did not have legal custody of [Child,] [and did not have] care and control of [Child]. While it is clear that [Child] was under the care of Appellant at the inception of the case, it is also undisputed that [Child] was removed from her care by this Court on January 10, 2014. Appellant took no action to challenge this Court's Order [to] attempt to obtain custody of Child until 13 months later.

Appellant also contends that she should be permitted to intervene in [Child's] Goal Change Termination Hearing based upon Pennsylvania Rule of Civil Procedure 2327. Pa.R.C.P. [2327](4) provides that at any time during the pendency of an action, a non-party shall be permitted to intervene if "the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action." The Pennsylvania Supreme Court has found that the exact boundaries of what constitutes a legally enforceable interest are not clear. ***Pennsylvania Railroad Co. v. Hughart***, 222 A.2d 736 (Pa. 1966). The fact that a proceeding may, in some way, affect the proposed intervenor is not sufficient to invoke a "legally enforceable interest." ***In re L.J.***, 691 A.2d 520 (Pa. Super. 1997).

In the instant case, the Appellant has failed to identify any legally enforceable interest. As discussed above, there are only three circumstances when a person has a legally enforceable interest or standing[,] and the Appellant has not met any of these three requirements. Appellant merely alleges that she has bonded with the Child and established an emotional connection.

Even if Appellant had established a legally enforceable interest, Appellant's Motion was properly denied based upon undue delay. Under Pennsylvania Rule of Civil Procedure 2329(3), an application for intervention may be refused if the petitioner has unduly delayed in making an application for intervention or if the intervention will unduly delay, embarrass or prejudice the adjudication of the rights of the parties. Appellant filed her Motion to Intervene in February [of] 2015. Between January 10, 2014 and [the] filing of Appellant's Motion, the Court had conducted several Permanency Review Hearings. The Appellant did not file her Motion until 13 months after the Child was removed from her care. During that 13[-]month period, the Child was in a pre-adoptive home with her siblings[,] where she

bonded with her foster parents[,] who wished to adopt all three children. To allow Appellant to intervene after such a lengthy period of delay would have prejudiced the rights of all three minor children[,] who were entitled to permanency.

Trial Court Opinion, 7/1/15, at 4-6.

Based on the comment to Pa.R.J.C.P. 1100, which states, "Unless specifically provided in these rules, the Pennsylvania Rules of Civil Procedure . . . do not apply to dependency proceedings commenced pursuant to . . . [the Juvenile Act,] 42 Pa.C.S. § 6301 *et seq.*," we conclude that the Pennsylvania Rules of Civil Procedure are not applicable in this matter. Appellant's arguments regarding the application of Rule 2327 of the Pennsylvania Rules of Civil Procedure are misplaced. Thus, we need not discuss the merits of Appellant's arguments concerning Pa.R.C.P. 2327(3) and (4) in her first issue or Pa.R.C.P. 2327(2) in her second issue because they do not apply.

We next address Appellant's argument in her second issue that she has *in loco parentis* standing. Appellant relies on **T.B. v. L.R.M.**, 786 A.2d 913 (Pa. 2001), in arguing that our Supreme Court held that a child's best interest requires that a third party be granted standing to have the opportunity to fully litigate the issue of whether the *in loco parentis* relationship should be maintained. Appellant's Brief at 9-10. Appellant states that Child has lived with her and that she provided Child with care, a nurturing environment, and affection, thus assuming a stature like that of a parent. **Id.** at 10. Appellant suggests that it is in Child's best interest for

Appellant to be afforded standing in the dependency proceedings. *Id.* at 9-10. Appellant argues that DHS removed Child from her home without cause, and she contends that the denial of her petition to intervene effectively terminated any opportunity for her to demonstrate and litigate whether her relationship with Child should be maintained. *Id.* at 10.

In *Peters v. Costello*, 891 A.2d 705 (Pa. 2005), our Supreme Court outlined the relevant principles as follows:

> The term *in loco parentis* literally means "in the place of a parent." *Black's Law Dictionary* (7th Ed. 1991), 791.
>
> > The phrase "*in loco parentis*" refers to a person who puts oneself [sic] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. . . . The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child.

*Peters*, 891 A.2d at 710 (citation and footnote omitted).

This Court has stated that a third party cannot grant himself or herself *in loco parentis* status in defiance of the parents' wishes and the parent/child relationship. *Gradwell v. Strausser*, 610 A.2d 999, 1003 (Pa. Super. 1992).[2] *See E.W. v. T.S.*, 916 A.2d 1197, 1205 (Pa. Super. 2007) (stating, "the law provides that *in loco parentis* status cannot be achieved without the

---

[2] For purposes of custody disputes, anyone other than a parent is a third party. *Gradwell*, 610 A.2d at 1001.

consent and knowledge of, and in disregard of the wishes of a parent"). The frequency of a caretaker's services does not confer *in loco parentis* status. **Argenio v. Fenton**, 703 A.2d 1042, 1044 (Pa. Super. 1997) (holding that a grandmother's role as a child's frequent caretaker was insufficient to confer standing to file custody dispute against the child's birth father).

In **In re C.R.**, a former foster mother of two dependent children appealed orders dismissing her motions for a permanency review hearing to determine the placement of the children under section 6351 of the Juvenile Act. The former foster mother filed the motions approximately six months after the removal of the children from her home. This Court found that the former foster mother was seeking to intervene in the dependency proceedings through her motions.

The panel explained the following:

> party status in dependency proceedings is limited to only three classes of persons: "(1) the parents of the juvenile whose dependency is at issue; (2) the legal custodian of the juvenile whose dependency is at issue; or (3) the person whose care and control of the juvenile is in question." **In the Interest of L.C., II**, 900 A.2d 378, 381 (Pa. Super. 2006).

> **In re S.H.J.**, 78 A.3d [1158,] at 1160-1161 [(Pa. Super. 2013)].

> These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian. Due process requires that the child's legal caregiver, be it a parent or other custodian, be granted party status.

> *Id.* at 1161 (citation, quotation marks, emphasis, and some punctuation omitted). This Court has consistently held that foster parents and persons acting *in loco parentis* do not have standing to intervene in dependency cases. *Id.* at 1161 (citing, *inter alia*, *In re J.S.*, 980 A.2d 117, 122-23 (Pa. Super. 2009)).[3]
>
> > [3] In *In re J.S.*, a panel of this Court addressed an appeal, by the agency and the mother of the subject child, from the trial court's grant of permission for the child's foster parents [(who were the child's aunt and uncle)] to intervene in an ongoing dependency proceeding. The panel reversed, citing section 6336.1. The panel reasoned that the foster parents lacked legal custody and lacked standing both to participate in the proceedings and to review the juvenile court record. *Id*. at 122-23. Moreover, the panel noted that the foster parents could not stand *in loco parentis* to the child because their status as foster parents was subordinate to the agency, which maintained legal custody and was primarily responsible for the child's care and custody. *Id*. at 122 n.4.

*In re C.R.*, 111 A.3d at 184-185 (footnote in original).

In *In re C.R.*, the panel concluded that the former foster mother's failure to file a motion in relation to the removal hearings and instead seeking to become a party to the dependency proceeding, in which she lacked standing, was fatal to her appeals. The panel found the former foster mother's argument that she had been denied due process in the removal process was misplaced. The panel stated that the former foster mother's six-month delay in filing her motions demonstrated that she was seeking to advocate for herself as a foster parent deserving the placement of the children with her, instead of seeking to act in the best interest of the children. *In re C.R.*, 111 A.3d at 186. This Court then reiterated that foster

parents and persons acting *in loco parentis* do not have standing to intervene in dependency cases. ***Id.*** at 185.

In the instant case, the trial court found that Appellant was not a party under the three categories of parties set forth in the case law, citing ***In re C.R.*** Therefore, for this additional reason, we reject Appellant's argument concerning *in loco parentis* standing in her second issue.

Next, we address Appellant's contention in her third issue that the trial court erred in denying her petition to intervene without taking evidence, hearing argument, or issuing a rule to show cause. Appellant's Brief at 8, 11. As in ***In re C.R.***, Appellant is Child's former foster mother, and Child was previously removed from her home. Appellant failed to file a motion in relation to the removal hearings. Instead, she is seeking to become a party to the dependency proceedings. The trial court found that Appellant's thirteen-month delay in filing her motion demonstrated that she was seeking to advocate for herself as a foster parent, as opposed to acting in the best interest of Child. We note that:

> [u]nder paragraph (B), a motion may be denied if, among other reasons, there are insufficient grounds for the motion, the interest of the movant is already adequately represented, the motion for intervention was unduly delayed, or the intervention will unduly delay or prejudice the adjudication of dependency or the rights of the parties.

Pa.R.J.C.P. 1133 B cmt.[3]

The trial court also found as follows:

During that 13[-]month period, the Child was in a pre-adoptive home with her siblings[,] where she bonded with her foster parents[,] who wished to adopt all three children. To allow Appellant to intervene after such a lengthy period of delay would have prejudiced the rights of all three minor children[,] who were entitled to permanency.

Trial Court Opinion, 7/1/15, at 6.

As in **In re C.R.**, where the former foster mother delayed six months in filing her motion to intervene seeking to argue that she was denied due process in the removal of her foster children from her home, Appellant herein delayed thirteen months in challenging the removal of Child from her home through her motion to intervene. Pursuant to the comment to Pa.R.J.C.P. 1133B, we find that the trial court did not commit an error of law or abuse its discretion in summarily denying Appellant's motion to intervene.

Thus, although the trial court did not specifically cite the comment to Pa.R.J.C.P. 1133B, the court found insufficient grounds for the motion, the

_____

[3] In **Laudenberger v. Port Authority of Allegheny County**, 436 A.2d 147, 151 (Pa. 1981), our Supreme Court indicated, with regard to the explanatory notes and comments to the Pennsylvania Rules of Civil Procedure, that the explanatory comments are not part of the rules but may be used in construing the rules. Thereafter, Pa.R.C.P. 129 was amended to include Rule 129(e), which states, "A note to a rule or an explanatory comment is not part of the rule but may be used in construing the rule." Similarly, we have considered the comment to Pa.R.J.C.P. 1133B in ascertaining the intent of the Supreme Court in promulgating the Juvenile Court Rules of Procedure.

motion for intervention was unduly delayed, and the intervention of Appellant would unduly delay or prejudice the rights of the parties. There was no need for any testimonial evidence or credibility determinations to support this finding. Accordingly, we conclude that the trial court did not err as a matter of law or abuse its discretion in summarily denying Appellant's motion to intervene.[4]

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/20/2015

_____

[4] This Court may affirm the trial court's decision on any basis supported by the record and need not depend on our agreement with the trial court's reasoning or rationale. **Ario v. Ingram Micro, Inc.**, 965 A.2d 1194 (Pa. 2009); **Brickman Group Ltd. v. CGU Ins. Co**., 865 A.2d 918, 928 (Pa. Super. 2004). Although the trial court's reasoning in reaching its conclusion did not address the Pennsylvania Rules of Juvenile Court Procedure, the trial court's disposition was not an error of law or abuse of discretion, as the trial court discussed the same considerations set forth in the comment to Rule 1133B.